**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

**NICHOLAS A. SRADER,**

**Plaintiff,**

**v.**                                                         **CASE NO. 23-3178-JWL**

**UNITED STATES OF AMERICA, et al.,**

**Defendants.**

**MEMORANDUM AND ORDER**

**I. Nature of the Matter before the Court**

Plaintiff Nicholas A. Srader, a pretrial detainee currently incarcerated at the United States Penitentiary in Leavenworth, Kansas (USPL), filed this pro se civil action seeking relief from federal officials for the alleged violations of his constitutional rights. (Doc. 1.) He proceeds in forma pauperis and has paid the required initial partial filing fee. This matter comes now before the Court on Plaintiff's amended complaint, filed on August 18, 2023, and the five motions he has filed since that time. (Docs. 9, 11, 12, 13, 14, and 15.)

**II. Procedural History**

When Plaintiff initially filed his complaint, it was not on the required court-approved form, so the Court issued a notice of deficiency, directing him to re-submit his complaint on the form that was provided to him. (Doc. 4.) Plaintiff submitted a motion to amend his complaint (Doc. 5) and a proposed amended complaint (Doc. 5-1). A review of the proposed amended complaint revealed that although Plaintiff had written on the court-approved form, he did so largely to refer the Court to his initially filed complaint, which he purported to incorporate by reference. (*See* Doc. 5-1, p. 2.) In addition, the proposed amended complaint appeared to improperly join defendants

and claims and it did not identify individual counts, which left the Court unable to determine the specific nature of Plaintiff's claims.

Thus, on August 1, 2023, the Court issued a Memorandum and Order (M&O) identifying the deficiencies in the proposed amended complaint, denying the motion to amend the complaint, and allowing Plaintiff additional time in which to file a complete and proper amended complaint that did not suffer from those deficiencies. (Doc. 7.) The M&O also denied without prejudice Plaintiff's motion for appointment of counsel. *Id.* Plaintiff timely filed his amended complaint (Doc. 9). He has also filed three motions to submit additional documents, which the Court liberally construes as motions to supplement the record (Docs. 11, 12, and 14), a second motion to appoint counsel (Doc. 13), and what appears to be a motion for preliminary injunction (Doc. 15).

### III. The Amended Complaint

The amended complaint names the following Defendants:  USPL Warden D. Hudson, Captain Keller, A.W. Amirjo, A.W. Dierden, Regional Director Andrea Matevousian, Central Director Ian Conner, Chaplain Sutton, Unit Manager Grecco, and Case Counselor Lamont.[1] (Doc. 9, p. 1-3.) As Count I of the amended complaint, Plaintiff alleges the violation of the "Free Exercise Clause, Establishment Clause, First Amendment violation, 14th Amendment Violation. Denial of Right to Practice Odinism/Asatru Religion. [*sic*]" (Doc. 9, p. 4.) In the portion of the form complaint for identifying the supporting facts for Count I, Plaintiff states "The Federal Bureau of Prisons has created rules for its o[p]erations in accordance with the Code of Federal Regulations for the exercise of one[']s religious beliefs while a person is incarcerated. See attached." *Id.* Plaintiff has attached to the complaint itself four additional pages of supporting facts for Count I.

---

[1] In addition, Plaintiff purports to "incorporate by reference all additional defendants from the memorandum in support." *Id.* at 3. Such incorporation by reference is improper, as explained in Section V, below. Thus, the Court does not consider defendants not clearly identified in the form complaint and appropriate attachments.

in which he identifies differences in how USPL treats convicted inmates who practice Odinism or the Asatru faith and pretrial detainees with the same religious beliefs despite rules that require they receive the same treatment. *Id.* at 7-10.

For example, Plaintiff alleges that the Federal Bureau of Prisons (BOP) requires federal institutions to provide an outside area for Odinists' religious practices, but at USPL only convicted inmates may use the area; pretrial detainees are only allowed to practice their religious beliefs in their cells. *Id.* at 7. Plaintiff explains that under his religious beliefs, more than 40 holy days are generally observed by engaging in "a Blot," or "a gathering of kinfolk of those who practice this faith in an outdoor setting where a fire is created to connect and communicate as a portal to the Gods and goddesses." *Id.* at 7-8. The participants pass mead, prepare and share food, and make sacrifices to their deities through the fire, seeking to win the deities' favor and blessings. *Id.* at 8.

Plaintiff contends that BOP regulations allow Odinism practitioners to meet once a week at the designated outside area on their holy days for ceremonies but USPL allows only convicted inmates to do so. *Id.* at 9. He asserts that USPL refused to allow him to participate in a Yule ceremonial meal due to COVID, but challenges the legitimacy of this justification. *Id.* In addition, Plaintiff contends that the $30.00 weekly limit on pretrial detainees' commissary purchases—as compared to convicted inmates' ability to purchase up to $365.00 worth of items per week—makes it impossible for him to purchase adequate supplies to create meals to sacrifice to his gods. *Id.* at 10. Finally, he states that many of the Defendants "were made aware of the denial of religious practices [and] observance of the ceremonial meal and all are responsible for not allowing [him] to observe his religious beliefs . . . ." *Id.* He asserts that all "were deliberately indifferent to [his] serious [*sic*] held beliefs and denied [him his] right of freedom of expression." *Id.*

In Count II, Plaintiff alleges the violation of his First and Fourteenth Amendment rights to freedom of association by restricting his visitation to immediate family while allowing convicted inmates visits from friends and associates. *Id.* at 4, 11. Plaintiff further points to differences between availability of telephones and computers for pretrial detainees and convicted inmates and repeats his complaints regarding the limits on commissary purchases. *Id.* at 11-12. As in Count I, Plaintiff challenges the legitimacy of the differential treatment. *Id.* He alleges that certain Defendants "were all made aware of the disparity and acted deliberately indifferent to the disparity between [p]retrial [and] [c]onvicted inmates." *Id.* at 12.

In Count III, Plaintiff alleges an equal protection violation, citing the "privileges or exercise of rights that [p]retrial inmates are denied" but convicted inmates receive. *Id.* at 4-5. Specifically, Plaintiff points to the differences in daily time allowed out of one's cell, travel to and purchase limits at the USPL commissary, travel to the dining hall and options at meals, limits on the type of visitors they may receive, religious service and ceremony access, educational programming, outdoor recreation and equipment, and access to hobby craft materials. *Id.* at 14. Plaintiff contends that there is no legitimate penological interest in the differences and that the differences exist "to punish pretrial inmates for exercising their right to be deemed innocent until proven guilty, their right to a jury trial, and to induce pretrial inmates to plead guilty by imposing "harsh prison environments." *Id.* at 16.

Plaintiff also alleges in Count III that USPL's practices do not conform to the BOP's program statement for pretrial inmates. *Id.* at 14-15. He further asserts that the program statement has created a liberty interest in all of the activities identified above, an interest which USPL is unlawfully denying him. *Id.* at 15. He claims that certain Defendants "are all aware of these conditions and are responsible for creating [and] enforcing them and are deliberately indifferent to

4

the [e]ffects they have on [p]retrial inmates." *Id.* at 16. As relief, Plaintiff seeks declaratory relief, compensatory damages, and punitive damages. *Id.* at 6.

## IV. Screening Standards

Because Plaintiff is a prisoner, the Court is required by statute to screen his complaint and to dismiss the complaint or any portion thereof that is frivolous, fails to state a claim on which relief may be granted, or seeks relief from a defendant immune from such relief. 28 U.S.C. § 1915A(a) and (b); 28 U.S.C. § 1915(e)(2)(B).

The Tenth Circuit Court of Appeals has explained "that, to state a claim in federal court, a complaint must explain what each defendant did to [the pro se plaintiff]; when the defendant did it; how the defendant's action harmed [the plaintiff]; and, what specific legal right the plaintiff believes the defendant violated." *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007). The court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citation omitted).

The Court liberally construes a pro se complaint and applies "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). In addition, the Court accepts all well-pleaded allegations in the complaint as true. *Anderson v. Blake*, 469 F.3d 910, 913 (10th Cir. 2006). On the other hand, the Court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997).

"[W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief," dismissal is appropriate. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558 (2007). Furthermore, a pro se litigant's "conclusory allegations without supporting factual averments are

insufficient to state a claim upon which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). The Court must determine whether Plaintiff has "nudge[d] his claims across the line from conceivable to plausible." *See Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009) (quotation marks and citation omitted). "Plausible" in this context does not mean "likely to be true," but rather refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent," then the plaintiff has not "nudged [his] claims across the line from conceivable to plausible." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citing *Twombly*, 127 S. Ct. at 1974).

## V. Analysis

### A. Attachments and the Memorandum of Law

The Federal Rules of Civil Procedure apply to suits brought by prisoners. *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007). Pro se litigants must "follow the same rules of procedure that govern other litigants." *See Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007); *McNeil v. United States*, 508 U.S. 106, 113 (1993) (federal rules apply to all litigants, including prisoners lacking access to counsel). Plaintiff's memorandum of law submitted at the same time as his amended complaint does not comply with the local rules governing page limitations.

Plaintiff has attached clearly labeled pages to the amended complaint to fully state the supporting facts for each count. (Doc. 9, p. 7-16.) This is appropriate, although the form complaint limits such attachments to "two additional pages (8 1/2" x. 11") to explain any allegation or to list additional supporting facts." *Id.* at 4. Similarly, Plaintiff has included in his complaint an additional page listing Defendants. *Id.* at 9. Attaching an additional page or pages to identify Defendants is also appropriate, as the form complaint allows for "furnish[ing] the above information for

additional defendants." *Id.* at 2. The Court notes that Plaintiff should provide all of the required information for all defendants. *See id.* at 1-2.

Plaintiff has also, however, filed a 44-page memorandum in support of his complaint. (Doc. 9-1.) Local Rule 7.1(d) limits briefs in support of civil rights complaints by prisoners to 40 pages "[u]nless otherwise ordered" by the Court. D. Kan. 7.1(d)(2). Plaintiff has neither sought nor received permission from the Court to exceed the page limitations; thus, his memorandum of law is in violation of the local rules.

In addition, Plaintiff may not utilize the form complaint merely to refer the Court to other documents, even a contemporaneously filed memorandum in support. The Court's earlier order explained that a complaint may not simply refer to earlier filed pleadings; this rule also applies to contemporaneously filed pleadings. To be clear, a "complaint must contain all allegations and claims that Plaintiff intends to pursue in this action." (*See* Doc. 7, p. 4.) Any individuals not identified in the complaint itself—in other words, the form complaint and any appropriate attachments—as defendants are not defendants in this matter. Similarly, any arguments, factual allegations, or requests for relief not included in the complaint itself are not considered by the Court during this screening phase.

### B. Specificity of Legal Basis for Claims

The portion of the court-approved form utilized for the amended complaint for identifying the specific "constitutional provisions or laws of the United States" that Plaintiff believes were violated in each Count cites only to constitutional provisions. (Doc. 9, p. 3.) As early as 1954, the Supreme Court allowed a lawsuit seeking injunctive relief in which the plaintiffs "rested their suit directly on the Fifth Amendment and on the general federal-question jurisdiction of the district courts, 28 U.S.C. § 1331." *See Davis v. Passman*, 442 U.S. 228, 242-43 (1979) (citing *Bolling v.*

*Sharpe*, 347 U.S. 497 (1954)). And in 1971, in *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), the Supreme Court "approved a judicially-implied cause of action allowing individuals to seek damages for unconstitutional conduct by federal officials," specifically conduct that violated the Fourth Amendment. See *Big Cats of Serenity Springs, Inc.*, 843 F.3d at 859; *see also Bivens*, 403 U.S. at 397.

But under the current state of the law, "[t]he Constitution does not ordinarily provide a private right of action for constitutional violations by federal officials." *Big Cats of Serenity Springs, Inc. v. Rhodes*, 843 F.3d 853, 859 (10th Cir. 2016). Since 1971, the United States Supreme Court has expanded *Bivens* to allow damages actions for constitutional violations by federal officials in only two other scenarios: "a former congressional staffer's Fifth Amendment sex-discrimination claim" and "a federal prisoner's inadequate-care claim under the Eighth Amendment." *See Egbert v. Boule*, 142 S. Ct. 1793, 1802 (2022). And the Supreme Court has expressly limited further expansion of *Bivens*. *See Silva v. United States*, 45 F. 4th 1134, 1140 (10th Cir. 2022) ("[E]xpanding *Bivens* is not just 'a disfavored judicial activity,' it is an action that is impermissible in virtually all circumstances." (Citations omitted.)).

At this point, when a federal court is "asked to imply a *Bivens* action," it must first "ask whether the case presents 'a new *Bivens* context'—*i.e.*, is it 'meaningful[ly]' different from the three cases in which the Court has implied a damages action." *Egbert*, 142 S. Ct. at 1803 (quoting *Ziglar*, 137 S. Ct. at 1859-60). The case now before this Court involves an allegation that federal agents violated the First Amendment Free Exercise and Establishment Clauses and generally the Fourteenth Amendment[2] (Count I), the First Amendment's Freedom of Association Clause and

---

[2] To the extent that Plaintiff has cited the Fourteenth Amendment because it incorporated the Bill of Rights, making it applicable to the States, *see Timbs v. Indiana*, 139 S. Ct. 682, 686-87 (2019), or because it contains the Equal Protection Clause, it is inapplicable here because this action alleges the violation of Plaintiff's constitutional rights not by state officials, but by federal officials. If Plaintiff believes the Fourteenth Amendment otherwise is implicated

generally the Fourteenth Amendment (Count II), and the constitutional guarantees of equal protection, presumably as located in the Fifth Amendment (Count III). (Doc. 9, p. 4.) Because neither *Bivens*, *Carlson*, nor *Davis* involved a First Amendment claim or a claim of the violation of equal protection guarantees based on whether an inmate is a pretrial detainee or a convicted prisoner serving a sentence, this case is meaningfully different from the cases in which the United States Supreme Court has implied a damages action. In fact, in 2022, the United States Supreme Court expressly rejected the expansion of *Bivens* to include First Amendment retaliation claims and recognized that "[e]xtending *Bivens* to alleged First Amendment violations would pose an acute risk of increasing [substantial social costs]." *Egbert*, 142 S. Ct. at 1807-08.

The Supreme Court has further instructed that if the case is meaningfully different than *Bivens*, *Carlson*, and *Davis*, "a *Bivens* remedy is unavailable if there are 'special factors' indicating that the Judiciary is at least arguably less equipped than Congress to 'weigh the costs and benefits of allowing a damages action to proceed.'" *Egbert*, 142 S. Ct. at 1803 (quoting *Ziglar*, 137 S. Ct. at 1858 (internal quotation marks omitted)). As Justice Gorsuch recognized in his concurring opinion in *Egbert*, "if the only question is whether a court is 'better equipped' than Congress to weigh the value of a new cause of action, surely the right answer will always be no." *Egbert*, 142 S. Ct. at 1810 (Gorsuch, J., concurring in the judgment). As the Tenth Circuit has explained, *Egbert* leaves "no doubt that expanding *Bivens* is not just 'a judicially disfavored activity,' it is an action that is impermissible in virtually all circumstances." *Silva*, 45 F.4th at 1140 (citing *Egbert*, 142 S. Ct. at 1803-07, 1809-10). Thus, to the extent that Plaintiff intends to bring his claims under *Bivens*, it is subject to dismissal because *Bivens* does not cover the violations alleged in the amended complaint.

---

in his claims, he should elaborate on that belief in his second amended complaint.

Because the Court liberally construes pro se pleadings, it turns to the rest of the amended complaint to try to determine the federal law under which Plaintiff asserts his claims. In the portion of the amended complaint invoking jurisdiction under 28 U.S.C. § 1331, Plaintiff lists additional statutes under which he invokes this Court's jurisdiction:   42 U.S.C. 2000bb-1(c) (a provision of the Religious Freedom Restoration Act (RFRA) protecting free exercise of religion), 28 U.S.C. 1346(B) (a provision of the Federal Tort Claims Act (FTCA)), 28 U.S.C. § 1402(b) (the venue provision for civil actions against the United States under the FTCA), 28 U.S.C. § 2401(b) (the statute of limitations for tort claims against the United States), and 10 additional FTCA statutes.[3] (Doc. 9, p. 2.) This indicates that Plaintiff may intend to bring claims under the RFRA and/or the FTCA.[4]

Different standards and requirements apply to each type of claim. For example, Plaintiff must allege different elements to state a plausible claim for relief under *Bivens* than he must to state a plausible claim for relief under the RFRA. *See Ghailani v. Sessions*, 859 F.3d 1295, 1305-06 (10th Cir. 2017) (explaining "difference between a prisoner's religious freedom claim brought under the First Amendment versus one brought under the RFRA"). In other words, in order to determine whether Plaintiff has pled a plausible claim for relief under a statute—in this case, the RFRA or the FTCA—the Court must know the statute on which Plaintiff relies.

---

[3] The additional FTCA statutes Plaintiff cites are: 28 U.S.C. § 2671 (definitions); § 2672 (administrative adjustment of FTCA claims); § 2673 (requirements for reporting FTCA claims to Congress); § 2674 (the United States' liability under the FTCA); § 2675 (requirement that a claim be presented to the appropriate federal agency before instituting a civil action in federal court); § 2676 (preclusive effect of the judgment in an FTCA action); § 2677 (right of the Attorney General or his or her designee to arbitrate, compromise, or settle an FTCA claim); § 2678 (attorney fees and penalties); § 2679 (guidance on the exclusiveness of the FTCA); and § 2680 (exceptions to the FTCA).
[4] Plaintiff also references 42 U.S.C. § 1983, but that statute provides relief only for constitutional violations by *state* officials. Since all of Plaintiff's allegations center on actions by *federal* officials, § 1983 does not provide Plaintiff with an avenue for redress.

Although the Court liberally construes pro se complaints, it "will not . . . construct a legal theory on plaintiff's behalf." *See Whitney*, 113 F.3d at 1173-74. In addition, whether considered under the FTCA or the RFRA, the amended complaint does not state a plausible claim for relief.

An actionable FTCA claim must be:

> [1] against the United States, [2] for money damages, ... [3] for injury or loss of property, or personal injury or death [4] caused by the negligent or wrongful act or omission of any employee of the Government [5] while acting within the scope of his office or employment, [6] under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."

*Brownback v. King*, 141 S. Ct. 740, 746 (2021) (citations omitted). Even taking all of the facts alleged in the amended complaint as true, Plaintiff has not alleged facts that show these elements.

To the extent that Plaintiff intends to allege claims under the RFRA, the ultimate question is whether the Government has "substantially burden[ed]" Plaintiff's "exercise of religion" and "whether the *application* of the burden to the claimant is in furtherance of a compelling governmental interest and is the least restrictive means of furthering that compelling governmental interest. Thus, under RFRA, a court does not consider the prison regulation in its general application . . . ." *Ghailani*, 859 F.3d at 1305 (emphasis in original) (citations and internal quotation marks omitted). For purposes of the screening phase in which this matter currently resides, this Court must determine whether Plaintiff has made a plausible claim that the Government has substantially burdened his personal exercise of his religion.

The factual allegations in the complaint, however, relate almost entirely to general assertions of ways in which "pretrial inmates" are treated differently than "convicted inmates." In order to show that the Government substantially burdened his individual exercise of Odinism or the Asatru faith, Plaintiff must plead facts that show the specific burden on him individually. In other words, he must show how he personally suffered the substantial burden.

Finally, the Court notes that even if Plaintiff has a right of action to assert his equal protection rights were violated, he has not pled sufficient facts to state a plausible claim for relief. The concept of equal protection, constitutionally speaking, is that "all persons similarly circumstanced shall be treated alike. But . . . '[t]he Constitution does not require things which are different in fact or opinion to be treated in law as though they were the same." *See Plyler v. Doe*, 457 U.S. 202, 216 (1982). Plaintiff's equal protection arguments, at their core, allege that as a pretrial inmate, he should be treated the same as an inmate who has been convicted and is serving a federal prison sentence. But it is clearly established that pretrial detainees do not have the same constitutional rights as convicted inmates serving a prison sentence. *Compare Bell v. Wolfish*, 441 U.S. 520, 535 (1979) (pretrial detainees have a Fourteenth Amendment right not to be punished) *with Smith v. Allbaugh*, 987 F.3d 906, 910 (10th Cir. 2021) (convicted and sentenced inmates have an Eighth Amendment right not to be subjected to cruel and unusual punishment); *see also Porro v. Barnes*, 624 F.3d 1322, 1325-26 (10th Cir. 2010) (noting different excessive force standards for individuals in different stages of the criminal justice system).

Additionally, other federal district courts within this circuit have explicitly held that "convicted prisoners are not similarly situated to pretrial detainees for equal protection purposes." *See Chrisco v. Scoleri*, 2019 WL 1254941, *9 (D. Colo. Mar. 19, 2019) (unpublished report and recommendation, adopted as acknowledged in *Chrisco v. Scoleri*, 2019 WL 8370786, *1 (D. Colo. Nov. 19, 2019) (unpublished)). This Court agrees. Because pretrial detainees and convicted inmates are not similarly situated, Plaintiff has failed to plead facts that support a plausible claim that his equal protection rights have been violated.

### C. Personal Participation

Relatedly, Plaintiff should be aware that he must allege personal involvement by each Defendant in the violation of his constitutional or statutory rights. *See Pahls v. Thomas*, 718 F.3d 1210, 1225 (10th Cir. 2013) (Liability must "be predicated on a violation traceable to a defendant-official's 'own individual actions.'"). For example, in a *Bivens* action, in order to state a plausible claim against a Defendant, Plaintiff must allege that (1) he or she either personally and directly participated in the alleged constitutional or federal statutory violation or Plaintiff must show that "(1) the defendant promulgated, created, implemented or possessed responsibility for the continued operation of a policy that (2) caused the complained of constitution harm, and (3) acted with the state of mind required to establish the alleged constitutional deprivation." *Id.* Conclusory allegations of involvement are not sufficient. *See Iqbal*, 556 U.S. at 676. "Various officials often have 'different powers and duties,'" so Plaintiff "must identify the specific policies over which particular defendants possessed responsibility and that led to the alleged constitutional violation." *Pahls*, 718 F.3d at 1226. The amended complaint currently before this Court includes only generalized statements about Defendants' involvement in the underlying facts of this matter and, as such, it is deficient and fails to state a plausible claim against any named Defendant.

### D. Joinder

Finally, the Court notes that the amended complaint appears to suffer from similar joinder problems as the previously rejected proposed amended complaint. As the Court has explained to Plaintiff, Federal Rule of Civil Procedure[5] 20(a)(2) governs permissive joinder of defendants and pertinently provides:

---

[5] The Federal Rules of Civil Procedure apply to suits brought by prisoners. *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007). Pro se litigants must "follow the same rules of procedure that govern other litigants." See *Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007); *McNeil v. United States*, 508 U.S. 106, 113 (1993) (federal rules apply to all litigants, including prisoners lacking access to counsel).

Defendants. Persons . . . may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action.

Rule 18(a) governs joinder of claims and pertinently provides: "A party asserting a claim . . . may join . . . as many claims as it has against an opposing party."

While joinder is encouraged for purposes of judicial economy, the "Federal Rules do not contemplate joinder of different actions against different parties which present entirely different factual and legal issues." *Zhu v. Countrywide Realty Co., Inc.*, 160 F. Supp. 2d 1210, 1225 (D. Kan. 2001)(citation omitted). The Court of Appeals for the Seventh Circuit has explained that under "the controlling principle" in Rule 18(a), "[u]nrelated claims against different defendants belong in different suits." *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007). In other words, under Rule 18(a), "multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2. Unrelated claims against different defendants belong in different suits." *Id.*

In sum, under Rule 18(a), Plaintiff may bring multiple claims against a single defendant. Under Rule 20(a)(2), he may join in one action any other defendants who were involved in the same transaction or occurrence and as to whom there is a common issue of law or fact. He may not bring multiple claims against multiple defendants unless the prescribed nexus in Rule 20(a)(2) is demonstrated with respect to all defendants named in the action.

## VI. Conclusion

For the reasons stated herein, it appears that this action is subject to dismissal in its entirety. Plaintiff is therefore given a final opportunity to file a complete and proper second amended complaint upon court-approved forms that cures all the deficiencies discussed herein. As Plaintiff

has been advised, an amended complaint does not simply supplement the original complaint; it completely replaces it. Therefore, any claims or allegations not included in the second amended complaint are no longer before the Court. Plaintiff may not simply refer an earlier pleading or a contemporaneously filed memorandum of law; the second amended complaint must contain all allegations, claims, and relief that Plaintiff intends to pursue in this action, including those to be retained from any earlier complaint.

Although Plaintiff may attach additional pages to the second amended complaint to provide the required information about named defendants, to identify all of his claims, and to articulate additional supporting facts for his claims, Plaintiff is again cautioned that he should not use the court-approved form to refer to a memorandum of law, nor should he attempt to incorporate such a memorandum by reference in his second amended complaint. Further, he must ensure that he complies with the local rules regarding page limitations.

Plaintiff must write the number of this case (23-3178) at the top of the first page of his second amended complaint. He must name each defendant in the caption of the complaint and again refer to each defendant in the body of the complaint. In each count of the second amended complaint, he must adequately identify the federal constitutional provision or law he believes was violated and he must allege sufficient facts to show that each defendant personally participated in at least one of the federal constitutional violations alleged in the complaint, including dates, locations, and circumstances. If Plaintiff fails to timely file a second amended complaint, the Court will proceed on the current amended complaint, which may be dismissed for the reasons stated herein without further prior notice to Plaintiff.

## VII. Motions

Also before the Court are Plaintiff's motions to submit additional documents (Docs. 11, 12, and 14), his motion to appoint counsel (Doc. 13), and what the Court liberally construes as a request for preliminary injunction (Doc. 15). Plaintiff's motions to submit additional documents, which the Court construes as motions to supplement the record, will be denied. Plaintiff seeks to present additional argument in support of his claims and to submit copies of federal regulations, BOP policies, and BOP program statements, but doing so is unnecessary at this time. This action is in the preliminary screening stage, during which the Court liberally construes pro se pleadings, accepts all well-pleaded allegations in the complaint as true, and construes them in the light most favorable to Plaintiff. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). If this action passes the statutorily required screening the Court now conducts, the case will proceed and Plaintiff will be able to further develop his arguments in the future.

Also before the Court is Plaintiff's second motion to appoint counsel. (Doc. 13.) As explained when the Court denied Plaintiff's first motion to appoint counsel (Doc. 3), there is no constitutional right to appointment of counsel in a civil case. *Carper v. Deland*, 54 F.3d 613, 616 (10th Cir. 1995). The decision whether to appoint counsel in a civil matter lies in the discretion of the district court. *Williams v. Meese*, 926 F.2d 994, 996 (10th Cir. 1991). The burden is on the applicant to convince the court that there is sufficient merit to his claim to warrant appointment of counsel. *Steffey v. Orman*, 461 F.3d 1218, 1223 (10th Cir. 2006) (citing *Hill v. SmithKline Beecham Corp.*, 393 F.3d 1111, 1115 (10th Cir. 2004)). It is not enough "that having counsel appointed would have assisted [the prisoner] in presenting his strongest possible case, [as] the same could be said in any case." *Steffey*, 461 F.3d at 1223 (citing *Rucks v. Boergermann*, 57 F.3d

978, 979 (10th Cir. 1995)).

In deciding whether to appoint counsel, the Court considers "the merits of the prisoner's claims, the nature and complexity of the factual and legal issues, and the prisoner's ability to investigate the facts and present his claims." *Rucks*, 57 F.3d at 979; *Hill*, 393 F.3d at 1115. Plaintiff alleges in his current motion to appoint counsel that "the mail office" arbitrarily rejects letters," which prevents Plaintiff from meeting court deadlines. (Doc. 13, p. 2.) Plaintiff has met each deadline this Court has set thus far. Plaintiff also explains that he fears retaliation once Defendants are served in this matter, which could entail administrative segregation and restrict his ability to pursue this case. *Id.* But there is no guarantee at this point that service will occur. Rather, it remains unclear whether Plaintiff will assert a colorable claim against a named defendant; the issues are not yet clarified and may not be complex; and Plaintiff appears capable of adequately presenting facts and arguments. Thus, the Court will deny the motion to appoint counsel (Doc. 13) without prejudice to refiling if the material circumstances change.

Plaintiff's most recent filing is titled "Affidavit in Support of Order to Show Cause" (Doc. 15) and, liberally construed, it seeks a preliminary injunction. The affidavit avers that USPL's failure to follow BOP rules and regulations are preventing Plaintiff from preparing a defense in his ongoing federal criminal proceedings in a different United States District Court, affecting his medical conditions and mental health, causing him severe financial loss by preventing him from running his limited liability corporation, and destroying his relationships, including preventing a meaningful relationship with his father, who is dying of leukemia. (Doc. 15-1, p. 2-4.) The remainder of the affidavit elaborates on Plaintiff's claims of unlawful disparate treatment of pretrial detainees and convicted inmates. *Id.* at 4-19. Plaintiff asks the Court to lift the disparate restrictions immediately. *Id.* at 19.

17

To justify a preliminary injunction, Plaintiff must establish that: (1) he will suffer irreparable injury unless the injunction issues; (2) the threatened injury outweighs whatever damaged the proposed injunction may cause the opposing party; (3) the injunction, if issued, would not be adverse to the public interest; and (4) there is a substantial likelihood of success on the merits. *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1188 (10th Cir. 2003). Because a preliminary injunction is an extraordinary remedy, the right to relief must be clear and unequivocal. *Id.*

Plaintiff has not shown a clear and unequivocal right to a preliminary injunction. As noted above, Plaintiff's precise claims are as yet unclear. Therefore, it cannot be said that there is a substantial likelihood that he will succeed on the merits of his claims in this action. Accordingly, the motion for preliminary injunction will be denied.

**IT IS THEREFORE ORDERED** that Plaintiff is granted to and including October 10, 2023, to file a complete and proper second amended complaint on the court-approved form that cures the deficiencies discussed herein. If Plaintiff fails to timely file a second amended complaint that cures the deficiencies, this matter may be dismissed without further prior notice to Plaintiff. The clerk is directed to send *Bivens* forms and instructions to Plaintiff.

**IT IS FURTHER ORDERED** that Plaintiff's motions (Doc. 11, 12, 13, 14, and 15) are **denied without prejudice** for the reasons stated herein.

**IT IS SO ORDERED.**

DATED:   This 8th day of September, 2023, at Kansas City, Kansas.


S/ John W. Lungstrum
JOHN W. LUNGSTRUM
United States District Judge

18