## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

**NICHOLAS A. SRADER,**

**Plaintiff,**

**v.**                                                    **CASE NO. 23-3178-JWL**

**UNITED STATES OF AMERICA, et al.,**

**Defendants.**

## MEMORANDUM AND ORDER

### I.   Nature of the Matter before the Court

Plaintiff Nicholas A. Srader, a federal pretrial inmate currently incarcerated at the United States Penitentiary in Leavenworth, Kansas (USPL), filed this pro se civil action seeking relief from federal officials for the alleged violations of his constitutional rights. (Doc. 1.) He proceeds in forma pauperis and has paid the required initial partial filing fee.

### II.  Procedural History

When the Court conducted the statutorily required initial review of the first complaint Plaintiff filed on the required, court-approved form, it suffered from certain deficiencies, so the Court granted Plaintiff time in which to file a complete and proper amended complaint that did not suffer from those deficiencies. Plaintiff timely filed his amended complaint, but the initial review of the amended complaint also revealed deficiencies, so the Court granted Plaintiff a final opportunity to cure the deficiencies by filing a complete and proper second amended complaint. Plaintiff's second amended complaint (Doc. 27) comes now before the Court, as does Plaintiff's currently pending motion to supplement the second amended complaint (Doc. 28), his motion to appoint counsel (Doc. 29), a motion for preliminary injunction (Doc. 30), a letter in support of the

1

motion to appoint counsel and in support of the merits of the claims in the second amended complaint (Doc. 33), and a second motion for preliminary injunction (Doc. 34). In this order, the Court will address all of Plaintiff's outstanding motions. It begins, however, with the statutorily required screening of the second amended complaint.

## III. Screening Standards

Because Plaintiff is a prisoner, the Court is required by statute to screen his complaint and to dismiss the complaint or any portion thereof that is frivolous, fails to state a claim on which relief may be granted, or seeks relief from a defendant immune from such relief. 28 U.S.C. § 1915A(a) and (b); 28 U.S.C. § 1915(e)(2)(B).

The Tenth Circuit Court of Appeals has explained "that, to state a claim in federal court, a complaint must explain what each defendant did to [the pro se plaintiff]; when the defendant did it; how the defendant's action harmed [the plaintiff]; and, what specific legal right the plaintiff believes the defendant violated." *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007). The elements that must be shown to prove the violation depend on the particular constitutional or statutory right that was allegedly violated. *See Pahls v. Thomas*, 718 F.3d 1210, 1225 (10th Cir. 2013).

The Court liberally construes a pro se complaint and applies "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). In addition, the Court accepts all well-pleaded allegations in the complaint as true. *Anderson v. Blake*, 469 F.3d 910, 913 (10th Cir. 2006). On the other hand, the Court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997).

2

"[W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief," dismissal is appropriate. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558 (2007). Furthermore, a pro se litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). The Court must determine whether Plaintiff has "nudge[d] his claims across the line from conceivable to plausible." *See Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009) (quotation marks and citation omitted). "Plausible" in this context does not mean "likely to be true," but rather refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent," then the plaintiff has not "nudged [his] claims across the line from conceivable to plausible." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citing *Twombly*, 127 S. Ct. at 1974).

### III. The Second Amended Complaint

The second amended complaint names the following Defendants:  the United States of America; Federal Bureau of Prisons (FBOP) Director Colete [*sic*] Peters, FBOP Regional Director Andre Matevousian, USPL Warden (fnu) Hudson, former USPL Associate Warden of Operations (fnu) Pireden, current USPL Associate Warden of Operations (fnu) (lnu), former USPL Associate Warden of Programs (fnu) Amirjo, current USPL Associate Warden of Programs (fnu) (lnu), former USPL Captain of Operations (fnu) Keller, current USPL Captain of Operations (fnu) (lnu), USPL Unit Manager (fnu) Grecco, USPL Case Counselor (fnu) Lamont, and USPL Chaplain (fnu) Sutton. (Doc. 27, p. 1-4.)

Plaintiff asks the Court to take a "totality of the circumstances" approach to his presentation of this action and in the space on the court-approved form for setting out the supporting facts for Counts I, II, and III, he advises that "[s]upporting facts are alleged in the attached 6 pages." *Id.* at

7-8. The Court sees no need to detail all of the alleged facts in this order. Plaintiff is assured, however, that the Court has carefully read and considered all of the facts asserted in the filings now before the Court. To that end, Plaintiff's motion to supplement the second amended complaint (Doc. 28) will be granted; the Court has considered the additional facts asserted in that motion as well as the six pages of supporting facts attached to the second amended complaint. A highly summarized overview of the alleged facts is as follows.

Plaintiff was criminally charged in the United States District Court for the Western District of Missouri and is being held as a pretrial inmate at USPL. (Doc. 27, p. 11.) Under 28 C.F.R. § 551.100 and FBOP Program Statement 7331.05, "[p]retrial inmates will be separated, to the extent practicable, from convicted inmates." Pretrial inmates are denied access to several areas, services, and programs because convicted inmates work in or access them. (Doc. 27, p. 11.) The relevant rules and regulations provide that when it is not practicable to separate pretrial and convicted inmates, "employees will screen and assess pretrial inmates, permitting those who do not present a risk to the security or orderly running of the institution to have regular contact with convicted inmates." FBOP Program Statement 7331.05(a). According to Plaintiff, USPL staff refuse to conduct this screening, which results in denying pretrial inmates access to certain activities, facilities, and services. (Doc. 27, p. 12.) Plaintiff challenges the notion that "such restriction is necessary for the safe orderly running of the institution in order to prevent pretrial inmates from coming in[to] contact with convicted inmates." *Id.*

Plaintiff further alleges that Defendants have failed and continue to fail to comply with a FBOP program statement that requires pretrial inmates to be given the least restrictive housing necessary. (Doc. 17, p. 13.) He contends that he is given inadequate access to telephones, computers, and law library computers; that Defendants are restricting his visitors in violation of

FBOP policy; that USPL staff has improperly restricted and rejected mail sent to him; that he is denied access to the dining hall, resulting in his receiving "food that is not warm [and] no eating utensils; that he cannot access cold water in his cell; and he is not allowed to choose food that complies with his dietary needs. *Id.* at 13-14. Plaintiff also points to differences in pretrial and convicted inmates' access to various programs and services, including but not limited to time allowed out of one's cell, access to the institutional commissary, limits on spending, and the denial of pretrial inmates' access to religious services, outdoor worship areas, and other religious accommodations. *Id.* at 14-15.

With respect to religious access, Plaintiff specifically notes that his status as a pretrial inmate results in his being denied access to outdoor worship areas weekly and on authorized holy days. *Id.* at 14. Plaintiff practices Odinism/Asatru, and the FBOP has recognized that this religion includes special religious practices; there are designated outdoor grounds, for example, to conduct religious ceremonies that involve making a fire through which practitioners can access the gods and goddesses and sacrifice food and drink to them. *Id.* Plaintiff sees no reason why he is not allowed access to these outside prayer grounds weekly and on holy days.

Plaintiff contends that the restrictions placed on him as a pretrial inmate[1] are a form of punishment for his choice to exercise his constitutional right to a trial and are effectively illegal retaliation for engaging in the constitutionally protected activity of demanding a trial on the criminal charges brought against him. *Id.* at 15. He claims that the restrictions are arbitrary and purposeless other than to punish pretrial detainees in general and himself in particular. (Doc. 28, p. 2.) Thus, he asserts, although different constitutional violations have occurred and different

---

[1] To the extent that Plaintiff intends to bring claims on behalf of other pretrial inmates, it is well established that a pro se individual may not represent others in court, even as a class representative. *See Fymbo v. State Farm Fire & Cas. Co.*, 213 F.3d 1320, 1321 (10th Cir. 2000).

injuries result from the restrictions, "each restriction is tied to one reason, the infliction of punishment without due process of law" as required by the Fifth Amendment. *Id.*

As Count I of the second amended complaint, Plaintiff alleges the violation of his rights under the First Amendment to the United States Constitution because he is denied the right to free expression of religion and the right to freedom of association; the violation of his Fourth Amendment rights because he is confined to his cell for 21 hours per day; the violation of his Fifth and Sixth Amendment due process rights because, as a pretrial detainee who is exercising his constitutional right to trial, he is subject to punishment—via the restrictions—but is denied due process; the violation of the Eighth Amendment's prohibition against cruel and unusual punishment; and the violation of the Fourteenth Amendment's Equal Protection Clause because pretrial detainees at USPL are treated differently than similarly situated pretrial detainees at other FBOP facilities.[2] *Id.* at 7-8.

As Count II of the second amended complaint, Plaintiff alleges that Defendants have violated and continue to violate FBOP Rules and Regulations and the Code of Federal Regulations (CFR). *Id.* Plaintiff contends that FBOP Program Statements create a liberty interest in multiple programs and thus he has the right to request review by a court of law of the violations of the Rules and Regulations and the CFR and the right to seek redress and remedy of the injuries caused by

---

[2] To the extent that the second amended complaint or Plaintiff's other submissions to this Court takes issue with the Court's prior statement that "it is clearly established that pretrial detainees do not have the same constitutional rights as convicted inmates serving a prison sentence," (Doc. 16, p. 12) the Court wishes to clarify its meaning. As Plaintiff accurately points out, *Bell v. Wolfish*, 441 U.S. 520, 545 (1979), states that "pretrial detainees, who have not been convicted of any crimes, retain at least those constitutional rights that we have held are enjoyed by convicted prisoners." The Court did not intend to imply in its previous order that pretrial inmates have *fewer* constitutional rights than convicted inmates. Rather, it intended only to point out that some constitutional rights afforded to pretrial inmates arise from different constitutional provisions than those afforded to convicted inmates. Therefore, there may be different standards for evaluating whether the constitutional right has been violated. For example, as the *Bell* Court explained with regard to punishment of inmates, "Due process requires that a pretrial detainee not be punished. A sentenced inmate, on the other hand, may be punished, although that punishment may not be 'cruel and unusual' under the Eighth Amendment." *Bell*, 441 U.S. at 535 n.16. Plaintiff is assured that the Court does not base any of its analysis on the belief that Plaintiff, as a pretrial inmate, is entitled to less constitutional protection than a convicted inmate.

the violations. *Id.* at 8. As Count III of the second amended complaint, Plaintiff alleges that USPL is substantially burdening or outright denying the exercise of his religion without compelling justification. *Id.* at 7-9. He contends that Defendants have denied him access to the outdoor religious services area and the special worship items used in his religion despite there being a less restrictive means of meeting USPL objectives. *Id.* at 8.

As Count IV of the second amended complaint, Plaintiff asserts a claim against the FBOP under the FTCA. *Id.* at 6. As the supporting facts for Count IV, Plaintiff contends that Defendants failed to keep convicted inmate Leonard Barry separate from Plaintiff despite Defendants' stated need to keep convicted inmates separate from pretrial detainees. *Id.* Plaintiff alleges that this lack of reasonable care by Defendants allowed Barry to physically attack Plaintiff, causing permanent vision impairment, post-traumatic stress disorder, lack of sleep, contusions, and anxiety, which results in high blood pressure, sweaty palms, and elevated heart rate. *Id.* Plaintiff seeks injunctive relief; declaratory relief; compensatory damages; punitive damages, "monetary damages" of $75,000.00 per Defendant; attorney fees; costs and expenses; and any additional relief this Court deems just and proper. *Id.* at 10.

## IV. Analysis

### A. Plaintiff's Claims for Damages under *Bivens* (Counts I and III)

Counts I and III of the second amended complaint allege that various federal officials violated Plaintiff's constitutional rights. In its September 8, 2023 M&O, the Court addressed whether there is a cause of action under which Plaintiff may bring these claims. It explained:

> As early as 1954, the Supreme Court allowed a lawsuit seeking injunctive relief in which the plaintiffs "rested their suit directly on the Fifth Amendment and on the general federal-question jurisdiction of the district courts, 28 U.S.C. § 1331." *See Davis v. Passman*, 442 U.S. 228, 242-43 (1979) (citing *Bolling v. Sharpe*, 347 U.S. 497 (1954)). And in 1971, in *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), the Supreme Court "approved a

judicially-implied cause of action allowing individuals to seek damages for unconstitutional conduct by federal officials," specifically conduct that violated the Fourth Amendment. See *Big Cats of Serenity Springs, Inc.*, 843 F.3d at 859; *see also Bivens*, 403 U.S. at 397.

But under the current state of the law, "[t]he Constitution does not ordinarily provide a private right of action for constitutional violations by federal officials." *Big Cats of Serenity Springs, Inc. v. Rhodes*, 843 F.3d 853, 859 (10th Cir. 2016). Since 1971, the United States Supreme Court has expanded *Bivens* to allow damages actions for constitutional violations by federal officials in only two other scenarios: "a former congressional staffer's Fifth Amendment sex-discrimination claim" and "a federal prisoner's inadequate-care claim under the Eighth Amendment." *See Egbert v. Boule*, 142 S. Ct. 1793, 1802 (2022) [(citing *Davis* and *Carlson v. Green*, 446 U.S. 14 (1980))]. And the Supreme Court has expressly limited further expansion of *Bivens*. *See Silva v. United States*, 45 F. 4th 1134, 1140 (10th Cir. 2022) ("[E]xpanding *Bivens* is not just 'a disfavored judicial activity,' it is an action that is impermissible in virtually all circumstances." (Citations omitted.)).

At this point, when a federal court is "asked to imply a *Bivens* action," it must first "ask whether the case presents 'a new *Bivens* context'—*i.e.*, is it 'meaningful[ly]' different from the three cases in which the Court has implied a damages action." *Egbert*, 142 S. Ct. at 1803 (quoting *Ziglar*[ *v. Abbasi*, 582 U.S. 120, 139 (2017)]). . . . .

. . . [I]f the case is meaningfully different than *Bivens*, *Carlson*, and *Davis*, "a *Bivens* remedy is unavailable if there are 'special factors' indicating that the Judiciary is at least arguably less equipped than Congress to 'weigh the costs and benefits of allowing a damages action to proceed.'" *Egbert*, 142 S. Ct. at 1803 (quoting *Ziglar*, [582 U.S. at 136] (internal quotation marks omitted)). As Justice Gorsuch recognized in his concurring opinion in *Egbert*, "if the only question is whether a court is 'better equipped' than Congress to weigh the value of a new cause of action, surely the right answer will always be no." *Egbert*, 142 S. Ct. at 1810 (Gorsuch, J., concurring in the judgment). . . . *Egbert* leaves "no doubt that expanding *Bivens* is not just 'a judicially disfavored activity,' it is an action that is impermissible in virtually all circumstances." *Silva*, 45 F.4th at 1140 (citing *Egbert*, 142 S. Ct. at 1803-07, 1809-10). Thus, to the extent that Plaintiff intends to bring his claims under *Bivens*, [this action] is subject to dismissal because *Bivens* does not cover the violations alleged in the amended complaint.

(Doc. 16, p. 7-9.)

Counts I and III in the second amended complaint allege that Defendants violated Plaintiff's constitutional rights under the First, Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments. Plaintiff acknowledges the question of *Bivens* viability by stating:

> As seen Count one if the Constitutional violations in the totality of the circumstances should amount to a significant violation of a multitude of rights so much so that even if it is not a claim that has been previously been accepted under bivens that the allowance of the alleged conduct is so severe that it should be allowed to proceed so as to protect the interest of Justice for future generations. [*sic*]

(Doc. 27, p. 8.) In the attached pages that include the supporting facts for the second amended complaint, Plaintiff similarly argues:

> From a first amendment claim to a seizure of a person in his cell for no reason to the punishment of a pretrial detainee for exercising his right to trial to the unlawful punishment that is cruel and unusual used to force a guilty plea to the 14th amendment of pretrial not receiving the same constitutional protections as convicted inmates this lawsuit should be allowed to proceed. Even if it's not in the normal context of a Bivins claim it is so extra-ordinary in the deprivations described such as one's right to be free from punishment for exercising a right to a trial that it should be allowed to proceed. Damages and loss and personal injury exist to justify a tort and all the elements of an RFRA as well as first amendment claim are present. This is a suit of any and all types because the actions are so violative they cross all thresholds. [*sic*]

*Id.* at 16

Plaintiff provides no case law to support the contention that the severity or number of alleged constitutional violations affect whether a cause of action is available under *Bivens*, and this Court knows of no such legal authority. As explained above, when a plaintiff seeks to bring suit for damages for the unconstitutional behavior of federal officials, a federal court considers the following: (1) whether the case arises in a "new context" because it is meaningfully different from the three cases in which the United States Supreme Court has implied a damages action and (2) whether the Judiciary is at least arguably less equipped than Congress to weigh the cost and

benefits of allowing a damages action to proceed. Thus, Plaintiff's argument that the severity of his allegations warrants the creation of an implied cause of action is unpersuasive.

In his memorandum of law in support of the second amended complaint, Plaintiff advises that "the entire case is based on a 5th [A]mendment claim" and that under *Davis v. Passman*, 442 U.S. 228 (1979), the Fifth Amendment is an acceptable basis for a *Bivens* claim. (Doc. 27-1, p. 4.) Liberally construed, as is appropriate since Plaintiff proceeds pro se, Plaintiff's argument is that the current action does not arise in a new context because it, like *Davis*, claims that federal officials violated the Fifth Amendment. In light of the controlling decisions of the United States Supreme Court, however, this argument also fails.

In *Hernandez v. Mesa*, the United States Supreme Court examined whether the case before it contained *Bivens* claims that arose in a new context. 589 U.S. ___, 140 S. Ct. 735, 743 (2020). The Court explained:

> Petitioners contend that their Fourth and Fifth Amendment claims do not involve a new context because *Bivens* and *Davis* involved claims under those same two amendments, but that argument rests on a basic misunderstanding of what our cases mean by a new context. A claim may arise in a new context even if it is based on the same constitutional provision as a claim in a case in which a damages remedy was previously recognized. Compare *Carlson*, 446 U.S. at 16–18, 100 S. Ct. 1468 (allowing *Bivens* remedy for an Eighth Amendment claim for failure to provide adequate medical treatment), with [*Correctional Servs. Corp. v.*]*Malesko*, 534 U.S. [61,] 71-74 [(2001)](declining to create a *Bivens* remedy in similar circumstances because the suit was against a private prison operator, not federal officials). And once we look beyond the constitutional provisions invoked in *Bivens*, *Davis*, and the present case, it is glaringly obvious that petitioners' claims involve a new context, *i.e.*, one that is meaningfully different. *Bivens* concerned an allegedly unconstitutional arrest and search carried out in New York City [citation omitted]; *Davis* concerned alleged sex discrimination on Capitol Hill [citation omitted]. There is a world of difference between those claims and petitioners' cross-border shooting claims, where "the risk of disruptive intrusion by the Judiciary into the functioning of other branches" is significant. [*Ziglar*, 582 U.S. at 140].

*Hernandez*, 589 U.S. at ___, 140 S. Ct. at 743-44 (some internal citations omitted).

Thus, an allegation that the same constitutional right was violated in *Davis* and in Plaintiff's situation is not enough to show by itself that Plaintiff's claims arise in the same context as *Davis*. *See also Ziglar v. Abbasi*, 582 U.S. 120, 139 (2017) ("Even though the right and the mechanism of injury were the same as they were in *Carlson*, . . . the contexts were different."). Even considering the constitutional claims in Plaintiff's second amended complaint as being brought solely under the Fifth Amendment, this matter arises in a new context. Rather than concerning alleged sex discrimination on Capitol Hill, it alleges due process violations in a federal prison, which is clearly and meaningfully different. Because this case arises in a new *Bivens* context, this Court must consider "whether there are any special factors [that] counse[l] hesitation" about extending *Bivens* to the new context." *Hernandez*, 589 U.S. at ___, 140 S. Ct. at 743 (internal quotation marks and citations omitted). Again, United States Supreme Court caselaw provides guidance.

In *Ziglar*, the question was whether detainees could challenge under *Bivens* "the conditions of their confinement and the reasons or motives for imposing those conditions." 582 U.S. at 128-29. Significantly, one of detainees' claims alleged that the defendants "detained [the plaintiffs] in harsh pretrial conditions for a punitive purpose, in violation of the substantive due process component of the Fifth Amendment." *Id.* at 129. Although Plaintiff in this matter also alleges a procedural due process argument, the analysis in *Ziglar* is instructive.

> [I]t must be noted that a *Bivens* action is not "a proper vehicle for altering an entity's policy." Furthermore, a *Bivens* claim is brought against the individual official for his or her own acts, not the acts of others. "[T]he purpose of *Bivens* is to deter *the officer*." *Bivens* is not designed to hold officers responsible for the acts of their subordinates.
>
> Even if the action is confined to the conduct of a particular Executive Official in a discrete instance, these claims would call into question the formulation and implementation of a general policy. This, in turn, would necessarily require inquiry and discovery into the whole course of the discussions and deliberations that led to the policies and governmental acts being challenged. These

> consequences counsel against allowing a *Bivens* action against the Executive
> Officials, for the burden and demand of litigation might well prevent them—or, to
> be more precise, future officials like them—from devoting the time and effort
> required for the proper discharge of their duties.

582 U.S. at 140-41.

These considerations are relevant to the case now before this Court because Plaintiff seeks,

among other things, to alter the policies of USPL regarding pretrial detainees. (Doc. 27, p. 12

(alleging that certain Defendants "all each are responsible for upholding the policy of preventing

pretrial inmates access to the previously described activities").) As stated above, a *Bivens* action

is not the appropriate way to change USPL policy. In addition, recognizing a *Bivens* cause of action

for the Fifth Amendment due process claims Plaintiff asserts could lead to significant judicial

intrusion into the administration of prisons, risking the violation of constitutionally mandated

separation of powers.

> Running a prison is an inordinately difficult undertaking that requires expertise,
> planning, and the commitment of resources, all of which are peculiarly within the
> province of the legislative and executive branches of government. Prison
> administration is, moreover, a task that has been committed to the responsibility of
> those branches, and separation of powers concerns counsel a policy of judicial
> restraint.

*Turner v. Safley*, 482 U.S. 78, 84-85 (1987).

For these reasons, the Court concludes that it should not expand *Bivens* to imply a new

cause of action for damages stemming from Plaintiff's claims that Defendants violated his Fifth

Amendment Due Process rights or his claims that he is being subjected to varying constitutional

violations in retaliation for his choice to exercise his right to trial on his criminal charge.

**B. Plaintiff's Requests for Injunctive and Declaratory Relief (All Counts)**

In the second amended complaint, Plaintiff also seeks declaratory and injunctive relief.

(Doc. 27, p. 10.) First, the Court notes that Plaintiff neglects to identify the sort of declaratory

relief to which he believes he is entitled. Declaratory relief is defined as "[a] unilateral request to a court to determine the legal status or ownership of a thing." Black's Law Dictionary (11th ed. 2019). But even liberally construing this pro se second amended complaint, it does not ask this Court to determine the legal status or ownership of anything.

Second, to the extent that Plaintiff could proceed with his request for injunctive relief under an equity-based cause of action,[3] he has failed to state a plausible claim for relief. As twice previously explained to Plaintiff, "'to state a claim in federal court, a complaint must explain what each defendant did to [the pro se plaintiff]; when the defendant did it; how the defendant's action harmed [the plaintiff]; and, what specific legal right the plaintiff believes the defendant violated.'" (Doc. 7, p. 1-2 (quoting *Nasious*, 492 F.3d at 1163); Doc. 16, p. 5 (same).) In particular, Plaintiff is required to "allege personal involvement by each Defendant in the violation of his constitutional or statutory rights." (Doc. 16, p. 13 (citing *Pahls v. Thomas*, 718 F.3d 1210, 225 (10th Cir. 2013).) As in the amended complaint, the factual allegations in the second amended complaint largely do not attribute to individual Defendants specific acts or instances of inaction that violated Plaintiff's constitutional rights. (Doc. 27.)

For example, Plaintiff alleges:

> All defendants have personal involvement in that they have created and/or contributed to the implementation of policies violative of previously established law that are in violation of the 1st[,] 4th[,] 5th[,] 6[th], 8th[,] and 14th amendments as well as [t]he Code of Federal Regulations, Current Program Statements of the Federal Bureau of Prisons and also the Religious Freedom Restoration Act and said injuries from those violations are negligent as these individuals had a duty to the plaintiff through these Rules and Regulations and thus the failure to meet that duty has resulted in injuries which authorizes damages under the Federal Tort Claims Act.

---

[3] *See Bell v. Hood*, 327 U.S. 678, 684 (1946) ("[I]t is established practice for this Court to sustain the jurisdiction of federal courts to issue injunctions to protect rights safeguarded by the Constitution."); *Simmat v. U.S. Bureau of Prisons*, 413 F.3d 1225, 1231 (10th Cir. 2005) ("Federal Courts have long exercised the traditional powers of equity, in cases within their jurisdiction, to prevent violations of constitutional rights.").

*Id.* at 4.[4] These are the type of general, conclusory, overly broad statements that are insufficient to state a claim. *See Hall*, 935 F.2d at 1110.

Similarly, despite the instructions on the court-approved form complaint to "[d]escribe exactly how each defendant is involved," (Doc. 27, p. 7) Plaintiff repeatedly refers collectively to Defendants and asserts that they, as a whole, violated his rights. For example, Plaintiff asserts that "policies and deviations thereof violate" his constitutional rights, *id.* at 7; he uses the passive voice to assert that his rights "are violated," *id.* at 8; and he makes general assertions such as "U.S.P.L. is substantially burdening the exercise of my religion," "Defendants breached [their] duty when they allowed convicted inmate Leonard Barry to attack plaintiff," and "FBOP USPL staff" are restricting his constitutional rights, *id.* at 7, 9, and 11. "Plaintiffs must do more than show that their rights were violated or that defendants, as a collective and undifferentiated whole, were responsible for those violations. They must identify specific actions taken by particular defendants, or specific policies over which particular defendants possessed supervisory responsibility . . . ." *Walker v. Mohiuddin*, 947 F.3d 1244, 1249 (10th Cir. 2020) (quoting *Pahls*, 718 F.3d at 1228).

To the extent that Plaintiff names individual Defendants in the supporting facts, he fails to provide enough detail. Plaintiff specifically alleges that Defendant Sutton "is personally responsible for the denial of access to religious services and the celebratory meal" by "stat[ing] that all other defendants prevent him from both providing access to outside prayer grounds as well

---

[4] He further contends that discovery is necessary to reveal which Defendant or Defendants "are actually responsible" for directing Defendant Sutton—or, presumably, others—to commit the alleged constitutional violations. *Id.* at 5. When a lawsuit is in the initial screening phase, as this one is, the Court will dismiss the complaint, or any portion of the complaint, that "fails to state a claim upon which relief may be granted." *See* 28 U.S.C. § 1915A(b)(1). "Plaintiffs are required at the pleading stage to allege enough facts 'to raise a reasonable expectation that discovery will reveal evidence' to support their claim.'" *Vincent v. Utah Plastic Surgery Soc.*, 621 Fed. Appx. 546, 550 n.7 (10th Cir. Aug. 31, 2015) (unpublished) (quoting Twombly, 550 U.S. at 556). In other words, although the second amended complaint need not *prove* Plaintiff's claim that Defendants were involved in unconstitutional acts or inaction, Plaintiff "cannot file an inadequate complaint and then use the discovery process to develop a factual basis for [his] claims in the first instance." *See id.*

as the expression of the celebratory meal." (Doc. 27, p. 5.) The second amended complaint does

not, however, explain when Defendant Sutton made the statements or when he denied Plaintiff

access to religious services or the celebratory meal. Thus, Plaintiff has not met the standards for

stating a plausible claim against Defendant Sutton.

Similarly, Plaintiff identifies several Defendants who he asserts "each are responsible for

upholding the policy of preventing pretrial inmates access to the previously described activities"

and others who "are all responsible for implementing and the creation of the restrictive policy,"

which "they uphold and carry out." *Id.* at 12. As previously explained to Plaintiff, "'[v]arious

officials often have "different powers and duties,"' so Plaintiff 'must identify the specific policies

over which particular defendants possessed responsibility and that led to the alleged constitutional

violation.'" (Doc. 16, p. 13 (quoting *Pahls*, 718 F.3d at 1226).) He has not done so in the second

amended complaint.

Additionally, Plaintiff provides no dates for most of the events on which he bases his

claims. The exception is the attack he suffered on April 3, 2023. (*See* Doc. 27, p. 12.) With respect

to that incident, however, Plaintiff does not identify a specific Defendant or Defendants involved

in the alleged failure to protect Plaintiff. Rather, he states generally that "Defendants can not [*sic*]

claim they could not reasonably foresee the need to protect because that's what the basis for all

these restrictions are [*sic*] about. Defendants knew of the threat/risk and failed to protect." *Id.*

These are but examples of the ways in which Plaintiff has failed to allege sufficiently

specific personal participation by each named Defendant to state a plausible claim against him or

her. The Court will not detail herein the deficiencies with respect to each Defendant, but after

liberally construing and carefully considering all of the factual allegations in the second amended

complaint and supplements thereto, it concludes that Plaintiff has failed to allege sufficient facts

to show that any named Defendant personally participated in a constitutional violation. Thus, Counts I and III are subject to dismissal for failure to state a claim on which relief can be granted.

### C. Count II

In Count II, Plaintiff asserts that "the defendants have and continue to violate the Rules and Regulations of the Federal Bureau of Prisons as well as [t]he Code of Federal Regulations. (Doc. 27, p. 7-8.) "[A] failure to adhere to administrative regulations does not equate to a constitutional violation." *Hovater v. Robinson*, 1 F.3d 1063, 1068 n.4 (10th Cir. 1993). And to the extent that the second amended complaint can be liberally construed to argue in Count II that the failure to adhere to regulations violated Plaintiff's constitutional rights, such claims fail for the reasons that Plaintiff's constitutional claims in Counts I and II fail, as explained above.

### D. Count IV

In Count IV, Plaintiff brings a claim under the Federal Tort Claims Act (FTCA). (Doc. 27, p. 6.) The FTCA "allows the United States to be sued for claims arising out of negligent or wrongful acts or omissions of its employees, when such employees are acting within the scope of their duties." *Ingram v. Faruque*, 728 F.3d 1239, 1245 (10th Cir. 2013) (citation omitted). "The United States is the only proper defendant in an FTCA action." *Smith v. United States*, 561 F.3d 1090, 1099 (10th Cir. 2009) (quoting *Oxendine v. Kaplan*, 241 F.3d 1272, 1275 n.4 (10th Cir. 2001)). Thus, all other Defendants are subject to dismissal with respect to Plaintiff's FTCA claim.

The FTCA "provides the exclusive avenue to assert a claim sounding in tort against the United States." *Franklin Sav. Corp., In re*, 385 F.3d 1279, 1286 (10th Cir. 2004), *cert. denied*, 546 U.S. 814 (2005) (citing 28 U.S.C. § 2679(a)). The FTCA has procedural and jurisdictional requirements. *See Staggs v. U.S. ex rel. Dep't of Health and Human Servs.*, 425 F.3d 881, 885 (10th Cir. 2005) (stating that the "FTCA's presentation requirements are jurisdictional and cannot

be waived" (citation omitted)). The Tenth Circuit has summarized the FTCA requirements as follows:

> Under the FTCA, filing an administrative claim with the appropriate federal agency is a prerequisite to bringing a civil action against the United States for damages for the negligence or wrongful act of any United States employee. 28 U.S.C. § 2675(a); *Three-M Enterprises, Inc. v. United States*, 548 F.2d 293, 294 (10th Cir. 1977) ... A claim is deemed presented when a federal agency receives from a claimant "an executed Standard Form 95 or other written notification of an incident, accompanied by a claim for money damages in sum certain for ... personal injury, or death alleged to have occurred by reason of the incident." 28 C.F.R. § 14.2(a). "[B]ringing an administrative claim is a jurisdictional prerequisite to suit, imposed by Congress, which the courts have no power to waive." *Nero v. Cherokee Nation of Oklahoma*, 892 F.2d 1457, 1463 (10th Cir. 1989); *see also Bradley v. United States*, 951 F.2d 268, 270 (10th Cir. 1991).

*Industrial Constructors Corp. v. U.S. Bureau of Reclamation*, 15 F.3d 963, 967 (10th Cir. 1994).

Section 2675(a) provides that "[a]n action shall not be instituted" upon an FTCA claim "unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing . . . ." *Id.* at n.1. Therefore, exhaustion of administrative remedies is a prerequisite to suit under the FTCA, and courts lack jurisdiction over FTCA claims not presented to the appropriate federal agency. *See* 28 U.S.C. § 2675(a); *Greenlee v. U.S. Postal Serv.*, 247 F. Appx. 953, 954–55 (10th Cir. 2007). "Because the FTCA constitutes a waiver of the government's sovereign immunity, the notice requirements established by the FTCA must be strictly construed." *Bradley v. United States by Veterans Admin.*, 951 F.2d 268, 270 (10th Cir. 1991) (citation omitted). "The requirements are jurisdictional and cannot be waived." *Id.* (citation omitted); *Duplan v. Harper*, 188 F.3d 1195, 1199 (10th Cir. 1999) ("As a jurisdictional prerequisite, the FTCA bars claimants from bringing suit in federal court until they have exhausted their administrative remedies." (citations omitted)).

Plaintiff has not alleged facts in the second amended complaint that, if taken as true, establish that he complied with the FTCA's notice requirements and that he exhausted the

administrative tort claim remedy prior to filing this action. Because this Court cannot exercise jurisdiction over an administratively unexhausted FTCA claim, Plaintiff has failed to state a plausible claim under the FTCA, and Count IV of the second amended complaint is subject to dismissal.

## V. Conclusion

For the reasons stated herein, this action is subject to dismissal in its entirety. Highly summarized, Plaintiff's claims for damages based on Defendants' violation of his constitutional rights arise in a different context than those in which *Bivens* claims have been recognized by the United States Supreme Court and special factors counsel hesitation in implying a new cause of action for damages. Plaintiff seeks declaratory relief, but has not explained what determination he seeks through such relief. Plaintiff seeks injunctive relief, but even if this matter is construed as asking this Court to exercise its powers of equity and grant injunctive relief, Plaintiff has failed to allege sufficient facts to show that any named Defendant personally participated in a violation of his constitutional rights. Thus, even liberally construing the pro se second amended complaint and taking all facts alleged therein as true, Plaintiff has failed to state a plausible claim for relief for the violation of his constitutional rights.

To the extent that Plaintiff intended to base Count II only on Defendants' alleged violations of FBOP regulations, FBOP rules, or provisions of the Code of Federal Regulations, such violations do not establish a constitutional violation or cause of action in and of themselves. Finally, with respect to Count IV, Plaintiff has failed to allege facts that establish he has complied with the jurisdictional notice and administrative exhaustion requirements of the FTCA.

The Court has already allowed Plaintiff the opportunity to amend his complaint to cure the lack of a cause of action for his constitutional claims and to explain each Defendant's individual

role in the events underlying Plaintiff's claims. Because these deficiencies remain in the currently operative second amended complaint, the Court declines to allow Plaintiff the opportunity to further amend his complaint to cure them. *See Jensen v. West Jordan City*, 968 F.3d 1187, 1202 (10th Cir. 2020) (explaining that refusing leave to amend is justified when there is "'failure to cure deficiencies by amendments previously allowed'"). Accordingly, this matter will be dismissed without prejudice for failure to state a plausible claim on which relief could be granted.

Because this matter will be dismissed, Plaintiff's pending motion to appoint counsel (Doc. 29) and his two pending motions for preliminary injunction (Doc. 30 and 34) will be denied as moot. In addition, although the Court has now received a response (Doc. 36) to Plaintiff's allegations that he has been denied access to counsel (*see* Doc. 31), the Court will take no further action on those allegations. This case will be closed.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion to Supplement the Second Amended Complaint (Doc. 28) is **granted**.

**IT IS FURTHER ORDERED** that this matter is **dismissed without prejudice** for failure to state a claim on which relief can be granted. Accordingly, Plaintiff's motions (Doc. 29, 30, and 34) are **denied as moot.**

**IT IS SO ORDERED.**

DATED:   This 27th day of November, 2023, at Kansas City, Kansas.


S/ John W. Lungstrum
JOHN W. LUNGSTRUM
United States District Judge